**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**DR. ELLEN EDDINGS**                                                                                      **PLAINTIFF**

**V.                                            4:05CV1631 JMM**

**ROBERT CLOWERS, Superintendent of Schools
of the Pulaski County Arkansas Special School District;
the BOARD OF EDUCATION of the Pulaski County
Special School District, a public body corporate;
and DON HENDERSON, individually and
his former capacity as Superintendent of Schools
of the Pulaski County Special School District                         DEFENDANTS**

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pending is the Defendants' Motion for Summary Judgment. The Plaintiff has responded and the Defendants have replied. For the reasons set forth below, the Motion is GRANTED.

Facts

Plaintiff Ellen Eddings applied for the position of Director of Special Education in the Pulaski County Special School District (the "District"or "PCSSD") in 2003. The position vacancy was publicly announced. On April 2, 2004, a bi-racial interview committee formed by the District conducted interviews of the applicants for the position, including Eddings. Shortly after the interviews were conducted, the District's then Superintendent, Don Henderson, and Assistant Superintendent for Equity and Pupil Services, Karl Brown, determined that the position should be re-posted due to the lack of a diverse applicant pool, since all the applicants interviewed in April 2004 were African American. One of the District's obligations under Desegregation Plan 2000 in LRSD v. PCSSD, et al., U.S.D.C. Case No. LR-C-82-866, required that the District make efforts to develop racially diverse applicant pools for all available administrative positions.

Eddings and the other applicants were notified that the position was being re-posted. Eddings advised the District that she remained interested in the position. On June 8, 2004, following the re-posting of the position, the additional applicants who expressed interest in the position after the re-posting were interviewed by the District's biracial interview committee for the Director of Special Education position. Two of the five members of the interview committee were not available.

Shortly after the June 2004 interviews, the District tabulated the interview rating scores of the biracial interview committee and submitted two of the highest rated applicants from each of the April and June interviews to the Superintendent for personal interviews. Eddings was the highest rated applicant by the April 2004 interview committee, with a total rating score of 147. The second highest rated candidate from the April interviews was Jacqueline Dedmon, with a total score of 133. The two highest rated candidates from the June 2004 interviews were Martha Rhea, with a score of 82, and Rebecca Barr with a score of 73. Dr. Henderson interviewed Dr. Eddings and Mrs. Barr.[1]

After Dr. Henderson interviewed Plaintiff, and reviewed her resume and qualifications, he contacted some of Plaintiff's former coworkers in the Gary, Indiana School District. Dr. Henderson had previously been employed in the Gary District for some sixteen years, and Plaintiff had worked in the Gary District for the five years previous to her application for the Director of Special Education in the PCSSD. According to the Defendants, Dr. Henderson learned after talking to four different administrators in the Gary District that there had been significant problems in the special education division headed by Plaintiff while she was

---

[1] Mrs. Rhea withdrew her name from consideration.

employed in the Gary District.

Specifically, Dr. Henderson spoke to Sandra Irons, President of the Gary, Indiana Teachers Union. Ms. Irons stated in her deposition, "[Dr. Henderson] asked me . . . whether or not I thought that [Dr. Eddings] would make a good director for that school district. . . . I told him quite frankly that I didn't think so." (Irons Dep. At 7). Bob Redding, Assistant High School Principal in Gary, told Dr. Henderson, "[B]ased on what I see in . . . the Gary Community School Corporation with Special Education Department (sic) . . . I didn't think that [Dr. Eddings] . . . could handle the position based on her current duties in Gary." (Redding Dep. At 7). He also told Dr. Henderson that if he had other applicants for the position that he might want to look at them before he considered Dr. Eddings. Id. DeLynn Exum, who temporarily took over Plaintiff's position as Director of Special Education in Gary, told Dr. Henderson, " . . . it was a matter of public record that there was a concern about grant moneys . . . for special education . . . that had not been expended completely and had to be returned to the federal government on more than one year." (Exum Dep. at 7-8).

As far as the applicants' qualifications, Plaintiff had twenty-two years of experience, six years as an educational examiner for PCSSD, seven years in the PCSSD as a principal, two years in the District as a special education coordinator, two years in positions outside the District as an administrator/counselor and education diagnostician, and the past five years as the Director of Special Education for the Gary District. Plaintiff earned a master's in education from East Texas State University in 1979, and she received a doctorate in education from the University of Arkansas at Little Rock in 1999.

Mrs. Barr had twenty-three years of experience in education, with the last twenty-two

years in the District, including the past twelve years as a supervisor in the special education division of the District. Mrs. Barr was a special education teacher in the District from 1982 to 1992, and previous to that was a special education teacher for one year in another school district in Arkansas. Mrs. Barr earned a master's in education in 1991 from the University of Central Arkansas and was certified as a special education supervisor by the University of Arkansas at Little Rock in 1993.

Following the interviews by Dr. Henderson, he recommended Rebecca Barr, a white female, to the District's Board of Directors for the Director of Special Education position, which was approved by the District's Board in July 2004.

On August 26, 2004, Plaintiff filed a Charge of Discrimination (the "First Charge") with the Equal Employment Opportunity Commission. In the First Charge, Plaintiff alleged that she was discriminated against because of her race, African American, and her sex, female, in violation of Title VII of the Civil Rights Act of 1964.

On October 27, 2005, Plaintiff filed suit in this Court against the Defendants alleging race discrimination in violation of her rights under Title VII, 42 U.S.C. §§ 1981 and 1983, and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

In May 2006, the Director of Special Education position became vacant again following the resignation of Rebecca Barr from the position. Plaintiff and others applied for the position. On July 7, 2006, a biracial interview committee formed by the District interviewed Plaintiff and the other applicants. Following the interviews, the interview committee tabulated the rating scores. Dr. Tommy Broyles was the highest rated applicant by the 2006 interview committee, with a total score of 204. Plaintiff was the second highest ranked applicant from the 2006

interviews, with a total of 194.

Broyles had received a bachelor of science in education from the University of Central Arkansas in 1993, a master's in education from the University of Arkansas at Little Rock in 1998, and a doctorate in education leadership with an emphasis in special education from the University of Arkansas at Little Rock in 2005. Broyles served as an area special education supervisor for the Arkansas Department of Education for four years, worked as an associate director of special education in the Hot Springs School District for one year, served as a consultant for the Garland County Special Education Cooperative for one year, worked as the director of education for Millcreek of Arkansas Residential Treatment Facility in Fordyce, Arkansas, for one year, and worked for two years as the coordinator of school-based day treatment for the Little Rock School District. Dr. Broyles had also worked as a special education teacher for five years in Arkansas including one year as special education teacher in the District. In addition, Broyles was an owner of Special Solutions of Arkansas, a private company which has served as a special education administrative consultant for various school districts and educational cooperatives across the state since 2002.

Following the interviews by the biracial committee and consideration of the qualifications and experience of the candidates, the biracial committee recommended Broyles for the Director of Special Education position, and James Sharpe, the District's Superintendent, submitted the committee's recommendation to the District's board. On July 12, 2006, the District's Board of Directors accepted the committee's recommendation that Broyles be hired as the Director of Special Education.

On November 9, 2006, Plaintiff filed a Charge of Discrimination (the "Second Charge")

with the EEOC. In the Second Charge, Plaintiff alleged that she was discriminated against because of her race and her sex, and was retaliated against, all in violation of Title VII.

## Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

## Discussion of the Law

A.     Failure to Hire

A prima facie case of discrimination in a failure-to-hire context requires Plaintiff to show that (1) she belongs to a protected class; (2) she applied and was qualified for a job for which the Defendants were seeking applicants; (3) she was rejected; and (4) the Defendants hired someone from outside the protected class.  *Arraleh v. County of Ramsey,* 461 F.3d 967, 975 (8th Cir. 2006).[2]  The Court finds that Plaintiff has set forth a prima facie case in both her 2004 and 2006 failure to hire claims.  Therefore, it is the Defendants' burden to articulate a legitimate reason for its decision to hire Mrs. Barr and Dr. Broyles instead of Plaintiff.

Defendants contend that Mrs. Barr was hired because she was best qualified for the position.  Defendants state that Mrs. Barr's work as a special education teacher and supervisor in the PCSSD for over twenty years, twelve years of which she served as the supervisor, made her especially attuned to the District's needs and requirements.  Further, Dr. Henderson had reservations about Plaintiff after his conversations with her co-workers in the Gary District.

The Defendants also contend that Dr. Broyles was the best qualified for the position in

---

[2] The elements of claims alleging disparate treatment on the basis of race under Title VII and intentional employment discrimination on the basis of race under § 1981 and § 1983 are identical.  *Kim v. Nash Finch Co.,* 123 F.3d 1046, 1063 (8th Cir. 1997)(quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 n. 1(1993)).

2006.  His experience and his performance during his interview with the biracial committee made him the committee's choice for the position.  The Court finds that these reasons are legitimate non-discriminatory reasons for Defendants' decision to hire Mrs. Barr and Dr. Broyles for the position of Director of Special Education.

The burden, therefore, shifts to Plaintiff to show that the Defendants' reasons for not hiring Plaintiff are a pretext for discrimination.  As proof of pretext, Plaintiff contends that Mrs. Barr and Dr. Broyles were, in fact, less qualified for the position than Plaintiff.  The Eight Circuit has previously addressed a plaintiff's argument that her employer's "discriminatory animus [was] evidenced by the fact that [her employer] hired someone less qualified than her for [the position]." *Kincaid v. City of Omaha*, 378 F.3d 799 (8th Cir.2004).  In rejecting the plaintiff's argument, the Court held:

> Although an employer's selection of a less qualified candidate can support a finding that the employer's nondiscriminatory reason for the hiring was pretextual, it is the employer's role to identify those strengths that constitute the best qualified applicant.  This is so because the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.

*Id.* at 805 (internal citations omitted). Because the plaintiff in *Kincaid* could not show that the employer hired a "less qualified applicant" as opposed to an equally qualified candidate, her claim failed. *Id.* (emphasis in original) (citing *Lidge-Myrtil v. Deere & Co.*, 49 F.3d 1308, 1311 (8th Cir.1995) ("Although [an employee] does possess the experience and some of the other qualities essential for success in the position, this does not suffice to raise an inference that [the employer's] stated rationale for giving the position to another is pretextual."); *Pierce v. Marsh*, 859 F.2d 601, 604 (8th Cir.1988) ("The mere existence of comparable qualifications between

two applicants, one black male and one white female, alone does not raise an inference of racial discrimination.").

The Defendants have set forth in detail the qualifications of Dr. Broyles and Mrs. Barr, including the strengths of each candidate which the Defendants found most important in their selections. The Court finds that the Plaintiff has failed to show that Dr. Broyles and Mrs. Barr were less qualified than Plaintiff for the PCSSD Director of Special Education position.

Plaintiff also states that the fact that Dr. Henderson personally conducted interviews of the finalists for the 2004 position is evidence of pretext. The Court disagrees. There is no evidence that Dr. Henderson's decision to interview candidates for the position was based upon Plaintiff's race. In fact, there is evidence in the record that Dr. Henderson and other PCSSD superintendents interviewed finalists for upper level administrative positions on several occasions. (Ex. A at 31, Ex. C at 54, Ex. N at 8-20 of Def's Motion for Summ. Judg.).

Plaintiff also argues that Dr. Henderson was hostile to her during their interview. Accepting Plaintiff's perception as true, there is no evidence that Dr. Henderson's attitude toward Plaintiff during the interview had anything to do with Plaintiff's race.

Finally, Plaintiff argues that Dr. Henderson's calls to Plaintiff's former co-workers in the Gary District was a fishing expedition in order to justify his refusal to hire Plaintiff. Again, there is no evidence that Dr. Henderson's decision to call Plaintiff's former co-workers was based upon Plaintiff's race. It is undisputed that Dr. Henderson had a personal relationship with the individuals he called in the Gary District where Plaintiff had previously worked. Dr. Henderson's inquiries regarding Plaintiff's performance in Gary do not support an inference of discrimination. Further, the negative comments made about Plaintiff's performance in Gary

9

support the Defendants' decision to hire Mrs. Barr instead of Plaintiff, whether or not the comments were truthful. *See Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir.2002) (". . . whether the employer discriminated unlawfully depends on the employer's beliefs and motivation.")

    B    <u>Retaliation</u>

Title VII makes it unlawful for an employer to discriminate against an employee for "oppos[ing] any practice made unlawful by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To prove a retaliation claim, Plaintiff must show (1) that she engaged in statutorily protected activity; (2) an adverse employment action was taken against her; and (3) a causal connection exists between the two events. *Rheineck v. Hutchinson Tech., Inc.*, 261 F.3d 751, 757 (8th Cir.2001). As in Plaintiff's failure to hire claim, the Defendants may rebut the Plaintiff's claim by advancing a legitimate, "non-retaliatory reason for the adverse employment action." *Id.* If the Defendants can show a legitimate reason, the Plaintiff must show that the given reason was only a pretext for discrimination. *Id.*

Plaintiff claims the Defendants refused to hire her in 2006 in retaliation for her First EEOC Charge filed on August 26, 2004 and filing this lawsuit on October 27, 2005. The Court assumes that Plaintiff has presented enough evidence to establish the first two prongs of the analysis. The third prong, the causal connection between Plaintiff's protected conduct and the adverse employment action, is troublesome, however. To prove a causal connection, Plaintiff must demonstrate the Defendant's "retaliatory motive played a part in the adverse employment action." *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 896-97 (8th Cir.2002) (quotation

omitted). Evidence giving rise to an inference of retaliatory motive on the part of the employer is sufficient to establish the requisite causal link. *Id.* at 897. "An inference of a causal connection between [protected conduct] and [an adverse employment action] can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." *Wallace v. DTG Operations, Inc*., 442 F.3d 1112, 1119 (8th Cir.2006) (citation omitted).

Plaintiff filed suit on October 27, 2005.  On July 12, 2006, the District's Board of Directors accepted the committee's recommendation that Broyles be hired as the Director of Special Education.  More than eight months transpired between the time of Plaintiff's protected activity and the adverse employment action.  "Standing alone, a longer time gap between the protected activity and the adverse employment action 'weakens the inference of retaliation that arises when a retaliatory act occurs shortly after a complaint.'" *Shanklin v. Fitzgerald,* 397 F.3d 596, 604 (8th Cir. 2005)(quoting *Dhyne v. Meiners Thriftway, Inc*., 184 F.3d 983, 989 (8th Cir. 1999) (citation omitted).  A time interval of eight months is too long to support an inference of causation. *Trammel v. Simmons First Bank of Searcy*  345 F.3d 611, 616 (8th Cir. 2003)("[W]e conclude that the time interval of more than two months is too long to support an inference of causation.")(citing *Kipp v. Missouri Hwy. & Transp. Comm*., 280 F.3d 893, 897 (8th Cir.2002); *Nelson v. J.C. Penney Co.*, 75 F.3d 343, 346-47 (8th Cir.1996)).

The only other evidence of causation pointed out by Plaintiff is that one of the biracial committee members, Beverly Ruthven, knew that Plaintiff had filed suit against the PCSSD in 2005.  The fact that one member of a seven member committee knew of Plaintiff's protected activity alone is not enough to create an inference of causation.

Moreover, Defendants state that Dr. Broyles was more qualified for the position. As stated above, the Court finds that this is a legitimate non-discriminatory reason for the Defendants' decision to hire Dr. Broyles. The Court finds that the Plaintiff has failed to show that Dr. Broyles was less qualified than Plaintiff for the PCSSD Director of Special Education position. *Pierce v. Marsh*, 859 F.2d 601, 604 (8th Cir.1988).

Accordingly, Defendants' Motion for Summary Judgment (Docket # 34) is GRANTED. Defendants' Motion in Limine (Docket # 54) is MOOT. The Clerk is directed to close the case.

IT IS SO ORDERED this 19th day of July 2007.

_____
James M. Moody
United States District Judge